**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**AUGUSTINO F. SHEPAULA,**
**A200970157,**

**Petitioner,**

**v.** **CIVIL ACTION NO. 2:26cv341**

**PAUL PERRY,**
***Caroline Detention Facility*, *et al.***

**Respondents.**

# REPORT AND RECOMMENDATION

This matter was initiated by Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 filed by pro se Petitioner Augustino F. Shepaula ("Petitioner" or "Shepaula"). Pet. (ECF No. 1).[1] Shepaula is an immigration detainee currently being housed at Caroline Detention Facility. His Petition alleges he is unlawfully subject to mandatory immigration detention awaiting removal under 18 U.S.C. § 1231. He seeks release from custody under supervision claiming he has cooperated with efforts to remove him, but his removal is not reasonably foreseeable. Id. at 7.

Respondents opposed the Petition, arguing that Shepaula was still subject to mandatory detention under 8 U.S.C. § 1231, as he is subject to a final removal order, and his removal is reasonably foreseeable. Fed. Resp'ts' Resp. to Pet. ("Resp'ts' Opp'n") (ECF No. 7). Respondents argue that Shepaula's detention is lawful under 8 U.S.C. § 1231 pending his removal to his home country of Tanzania, and that Shepaula can't

[1] The matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and Rule 72(b) of the Federal Rules of Civil Procedure. (ECF No. 4).

meet his burden to show that his removal is not reasonably foreseeable. Id. at 3. The Opposition included a declaration from U.S. Immigration and Customs Enforcement ("ICE") Assistant Field Office Director Charles M. Byrne outlining Shepaula's criminal history and present immigration claims. Byrne Decl. (ECF No. 7-1). The Byrne Declaration describes Shepaula's older criminal conviction from 2011, as well as his immigration proceedings following entry of a final order of removal later that year. It also describes the recent efforts the Government has made to secure Shepaula's removal and his alleged lack of cooperation. Id. ¶¶ 7-16 (ECF No. 7-1, at 2-3). The court advised Shepaula, by written order, of his right to respond to the Opposition, the timeline for doing so, and the possible consequences of not responding. Notice (ECF No. 8). Shepaula filed a brief response disputing his lack of cooperation and reiterating his desire to remain in this country where he has resided for nearly 20 years. Pet'r Reply (ECF No. 11, at 1-2).

The Byrne Declaration originally accompanying Respondents' Opposition identifies Shepaula as a 50-year old native and citizen of Tanzania who was admitted to the U.S. on September 26, 2006 under a Student Visa. Byrne Decl. ¶¶ 5-6 (ECF No. 7-1, at 2). Thereafter, Director Byrne asserts:

> On January 28, 2011, Petitioner was encountered by ICE at the Shelby County, Alabama Jail subsequent to his arrest by local authorities for Felony Obstruction of Justice charges. Petitioner was interviewed by ERO, removability was established as his status had expired, and an immigration detainer was filed with the local authorities.
>
> On January 28, 2011, Petitioner pled guilty to the Felony Obstruction of Justice Charges and was tak[en] into civil immigration custody after being released from criminal custody and issued a Notice to Appear.
>
> On June 15, 2011, Petitioner had a hearing before an Immigration Judge.

> Petitioner noted that he did not have fear of returning to Tanzania, filed no other applications for relief, and was ordered removed.
>
> On December 23, 2011, Petitioner was released on an Order of Supervision (OSUP), while ICE attempted to obtain travel documents for him.
>
> On November 19, 2025, Petitioner was encountered by Homeland Security Investigations (HSI) in Washington D.C. During the encounter and through record checks it was determined that he was subject to a final Order of Removal from the United States.
>
> On November 20, 2025, Petitioner was provided with a travel document Request to fill out.
>
> On December 19, 2025, Petitioner's travel document request was submitted to ICE Headquarters Removal and International Operations.
>
> On February 5, 2026, the government of Tanzania issued a travel document to Petitioner.
>
> On May 12, 2026, Petitioner had a ticket and was scheduled for a commercial flight to Tanzania. Petitioner refused to get on the plane and was issued a Failure to Comply. Petitioner attempted to flee while inside of the holding room before his flight. Petitioner was returned to Caroline Detention Facility pending a chartered flight.
>
> Petitioner's travel document remains valid through February 5, 2027. ICE is currently working to schedule a chartered removal flight to Tanzania.

Byrne Decl. ¶¶ 7-16 (ECF No. 7-1, at 2-3).

After reviewing the briefing on Respondents' motions, attached exhibits, including the Byrne Declaration and Shepaula's response, I conclude that Shepaula is presently lawfully detained under 8 U.S.C. § 1231, and neither his Petition nor Response to Government's Opposition meet his burden to demonstrate that his removal to Tanzania

is not reasonably foreseeable. Accordingly, his continued detention does not state grounds for relief under 28 U.S.C. § 2241 at this time.

Federal courts may grant a writ of habeas corpus to any person "in custody in violation of the Constitution, laws, or treaties of the Unites States." 28 U.S.C. § 2241(c)(3). "The writ of habeas corpus has traditionally 'served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest.'" Luna Sanchez v. Bondi, No. 1:25-CV-18888, 2025 WL 3191922, at 82 (E.D. Va. Nov. 14, 2025) (quoting I.N.S. v. St. Cyr, 533 U.S. 289, 301 92001)). Habeas is "regularly invoked on behalf of noncitizens." Id. (quoting Quispe-Ardiles v. Noem, No. 1:25-cv-01382, 2025 WL 2783800, at *3 (E.D. Va. Sept. 30, 2025)) (additional citations omitted).

Pursuant to the Due Process Clause of the Fifth Amendment, no *person* shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. The Due Process Clause extends to *all* persons, including "aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "As the Supreme Court has recognized, 'habeas corpus in the federal courts provides a mode for the redress of due process of law. Vindication of due process is precisely its historic office.'" Castaneda v. Perry, 95 F.4th 750, 762 (4th Cir. 2024) (citing Fay v. Noia, 372 U.S. 391, 402 (1963), *overruled on other grounds by Wainwright v. Sykes,* 433 U.S. 72 (1977)).

After an order of removal becomes final, the Attorney General "shall detain the alien" during the ninety-day removal period established under 8 U.S.C. § 1231(a)(2). Zadvydas v. Davis, 533 U.S. 678, 683 (2001). "Section 1231 governs the detention and

removal of aliens subject to administrative final orders of removal, including reinstated orders of removal." Castaneda, 95 F.4th at 754.

The 90-day removal period under 8 U.S.C. § 1231 begins on the latest of three dates: (1) the date the order becomes administratively final; (2) if the removal is judicially reviewed and the court orders a stay of the removal, the date of the court's final order; and (3) if the individual is detained or confined, the date of his release. 8 U.S.C. § 1231(a)(1)(B). But upon the lapse of the 90-day removal period, the government must "subject [the non-citizen] to [an order of] supervision under regulations prescribed by the Attorney General." Id. § 1231(a)(3). In Shepaula's case, mandatory detention is proper for at least some period of time under 8 U.S.C. § 1231(a)(1)(B)(i) and (a)(2), following the Supreme Court's decision in Zadvydas v. Davis, 533 U.S. 678 (2001).

In Zadvydas v. Davis, the Supreme Court recognized the "serious constitutional concerns" arising from "indefinite detention" under § 1231. 533 U.S. at 682. The Court held that § 1231 authorizes post-removal-period detention only for "a period reasonably necessary to bring about [the] alien's removal from the United States." Id. at 689; see also 8 U.S.C. § 1231(a)(6). It further concluded that a "reasonably necessary" period is presumptively six months. Zadvydas, 533 U.S. at 701; Castaneda v. Perry, 95 F.4th 750, 760 (4th Cir. 2024) ("[T]he Zadvydas standard is due process: a § 1231 detainee who fails the Zadvydas test fails to prove a due process violation."). After the presumptively reasonable six-month period, the burden shifts to the detained individual to demonstrate that "there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

The Byrne Declaration updated the record on the status of Shepaula's immigration proceedings as of that date. It established that as of June 15, 2011, Shepaula was subject to an order of removal following proceedings instituted as a result of his 2011 criminal convictions. Petitioner did not appeal the Immigration Judge's decision, but he was released to supervision and thus only briefly detained prior to his recent immigration arrest. See Byrne Decl. ¶ 9-10 (ECF No. 7-1, at 3); 8 C.F.R. §§ 1003.38, 1241.1(c).

In his response to the Opposition, Shepaula does not dispute that he is subject to a final order of removal but argues that he fears deportation and that his arrest and detention have left him without means of support. Pet'r Resp. (ECF No. 11, at 2). He denies trying to flee—but apparently acknowledges (or at least does not dispute) the suggestion that he resisted efforts to transport him, writing that he believed it "unconstitutional for ICE forc[i]bly trying to deport me or make me sign papers without my own understanding." Pet. (ECF No. 1, at 7). He writes that he "didn't see or sign no travel documents," and that he "wanted to talk to Counceller Ambassador for help, they refused, trying to force me to sign some papers I don't know." Pet'r Resp. (ECF No. 11, at 2).

At the time of the Byrne Declaration, dated June 17, 2026, Shepaula had already been detained awaiting removal slightly longer than the presumptively reasonable period of detention authorized by Zadvydas. Since then, although Shepaula has apparently remained detained an additional four months, his detention still does not implicate the due process concerns raised by Zadvydas because the United States has demonstrated that his removal is imminent, and only prevented by his failure to cooperate with efforts to

remove him. Accordingly, despite some disagreement with the Government's evidence, Shepaula is unable to show that his removal to Tanzania is not reasonably foreseeable. The due process concerns which animate Zadvydas arise when pre-removal detention becomes indefinite—with "no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701.

At present, there is no further impediment to Shepaula's removal, and Tanzania has already issued travel documents which remain valid through February of 2027. Byrne Decl. ¶ 14. Indeed, according to the Government, and not contested by Shepaula, the only reason he was not removed previously was his own refusal to board the commercial flight arranged for his deportation. Byrne Decl. ¶ 15. At the time these matters were briefed the Government was still actively trying to schedule a charter flight to remove Shepaula to Tanzania. A petitioner cannot meet his burden to show that removal is not reasonably foreseeable based on his own refusal to cooperate with efforts to remove him. See 8 U.S.C. § 1231(a)(1)(C) (permitting continued detention where an alien "fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal"); Olajide v. B.I.C.E., 402 F. Supp. 2d 688, 694 (E.D. Va. 2005) (finding that removal was reasonably foreseeable where "the delay in [the petitioner's] removal, and thus his continued confinement pending removal, are the direct result of [the petitioner's] unreasonable refusal to accept free and appropriate dental and surgical treatment by a specialist"); Mattete v. Loiselle, No. 2:06-CV-652, 2007 WL 3223304, at *5 (E.D. Va. Oct. 26, 2007) (finding that removal was reasonably foreseeable where "for almost the entire length of his confinement, petitioner refused to

fill out the application for travel documents, refused to provide fingerprints and photos, refused to participate in telephone interviews with the Tanzanian consular, and gave false information regarding the person to contact to obtain his Kenyan birth certificate").

To the extent Petitioner brings collateral challenges to his removal proceedings, this court lacks jurisdiction under 8. U.S.C. § 1252(g) to review those claims. See Pet'r Reply (ECF No. 9, at 1). Congress has established that federal district courts lack jurisdiction to review collateral attacks on removal. See Joshua M. v. Barr, 439 F. Supp. 3d 632, 666-68 (E.D. Va. 2020) (noting that district courts have a "limited" "ability to review habeas petitions challenging removal orders"). Instead, Petitioner must directly appeal a BIA determination in one of the federal courts of appeal. See, e.g., id.; Igwebuike v. Caterisano, 230 F. App'x 278, 281 (4th Cir. 2007). This court has no power to resolve Petitioner's claims seeking cancellation of removal. Doe v. Mayorkas, No. 120-cv-618, 2021 WL 2336596, at *5 (E.D. Va. June 7, 2021).

## CONCLUSION AND RECOMMENDATION

Because Shepaula failed to meet his burden to demonstrate that his removal is not reasonably foreseeable, I recommend the motion to dismiss set out in Respondents' Opposition (ECF No. 7) be SUSTAINED and Shepaula's Petition (ECF No. 1) be DISMISSED, without prejudice. Should the circumstances of Shepaula's detention continue, notwithstanding his cooperation, he could refile the claim at that time.

## REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Newport News, Virginia

October 7, 2026

**Clerk's Mailing Certificate**

A copy of the foregoing was mailed this date to:

**Augustino F Shepaula**
**A200970157**
**Caroline Detention Facility**
**PO Box 1460**
**Bowling Green, VA 22427**

and an electronic copy was provided to:

**Robert Jacob Schmidt**
**DOJ-USAO**
**Eastern District of Virginia**
**Justin W. Williams United States Attorney's Building**
**2100 Jamieson Ave.**
**Alexandria, VA 22314**

Laura G. Griffin, Clerk

By /s/ J.L. Meyers
Deputy Clerk

October 7, 2026